UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

REBECCA JAMES,

    Plaintiff,

v.

ALLIED; SIP.US, LLC; MARC J.
FRIBUSH and MICHAEL A. RAND,

    Defendants.
_____/

## COMPLAINT

**I.   Introduction**

    1.    This is an action for damages brought against debt collectors for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

    2.    Defendants, along with other entities to be identified in discovery, are involved in a fraudulent and ongoing scheme whereby they have conspired to use false representations and threats to coerce the payment of money from consumers across the country who allegedly have failed to repay payday loans.  This scheme, operated by defendants as well as many other entities located in and around Buffalo, New York, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in

1

court against the consumer. The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm). Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response. When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt. Of course, no lawsuit has been filed. Often times the debt is time-barred. Often times, the consumer's account will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account. When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

      3.      The use of these unlawful debt collection practices by defendants and other debt collectors is epidemic in the Buffalo, New York metropolitan area, as described in the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants. The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued releases that warn consumers about this ongoing scam. In response, defendants and many other debt

collectors have moved their unlawful operations (at least in part) to Florida.

**II.     Jurisdiction**

4.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331.  Venue in this judicial district is proper because the pertinent events took place here.

**III.    Parties**

5.      Plaintiff Rebecca James is an adult, natural person residing in Kent County, Michigan.  Ms. James is a "consumer" and "person" as the terms are defined and used in the FDCPA.

6.      Defendant "Allied " is an entity that uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts.  Allied regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.  Allied is a "debt collector" as the term is defined and used in the FDCPA.

7.      During all times pertinent hereto, Allied directly and indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. James that are described in this complaint.

8.      The true and complete name of Allied, the location of Allied, and the names of Allied's employees and agents who participated in the unlawful efforts to collect a debt from Ms. James are not yet known and will need to be ascertained in discovery.  Allied also has used the names "Regional" and "Alliance" when communicating by telephone with consumers.

9.      Defendant SIP.US, LLC ("SIP") is a Florida limited liability company.  According SIP's 2015 Annual Report filed with the State of Florida, SIP's "Current Principal Place of Business" is 301 Clematis Street, Suite 3000, West Palm Beach, Florida 33401.  However, that

address is nothing more than a "virtual office" that is "rented" by SIP from an entity named Galleria International, LLC (www.galleria-international.com).  SIP is owned, managed and operated by defendants Marc J. Fribush and Michael A. Rand.  SIP regularly collects, directly or indirectly, debts owed or due or asserted to be owed or due another.  SIP is a "debt collector" as the term is defined and used in the FDCPA.

10. SIP is a toll-free service provider that markets and provides toll-free telephone numbers to toll-free subscribers such as Allied and other debt collectors, in order to enable Allied and other debt collectors to anonymously place telephone calls to consumers for the purpose of extorting money from consumers as described in this complaint.

11. During all times pertinent hereto, SIP directly or indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. James that are described in this complaint.

12. Defendant Mark J. Fribush is an adult, natural person, age 42, residing at 2014 Breckenridge Lane, Alpharetta, Georgia 30005.  Mr. Fribush owns, manages and operates defendant SIP.US, LLC.  Mr. Fribush regularly collects, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Fribush is a "debt collector" as the term is defined and used in the FDCPA.

13. During all times pertinent hereto, Mr. Fribush created, implemented, oversaw and ratified the policies, practices and procedures whereby SIP as a toll-free service provider marketed and provided toll-free telephone numbers to toll-free subscribers such as Allied and other debt collectors, in order to knowingly enable Allied and other debt collectors to anonymously place telephone calls to consumers for the purpose of extorting money as described

in this complaint.

14. During all times pertinent hereto, Mr. Fribush directly or indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. James that are described in this complaint.

15. Defendant Michael A. Rand is an adult, natural person, age 50, residing at 2713 Francis Road, Alpharetta, Georgia 30004, or possibly 200 Roy Street, Apartment 322, Seattle, Washington 98109.  Mr. Rand owns, manages and operates defendant SIP.US, LLC.  Mr. Rand regularly collects, directly or indirectly, debts owed or due or asserted to be owed or due another.  Mr. Rand is a "debt collector" as the term is defined and used in the FDCPA.

16. During all times pertinent hereto, Mr. Rand created, implemented, oversaw and ratified the policies, practices and procedures whereby SIP as a toll-free service provider marked and provided toll-free telephone numbers to toll-free subscribers such as Allied and other debt collectors, in order to knowingly enable Allied and other debt collectors to anonymously place telephone calls to consumers for the purpose of extorting money as described in this complaint.

17. During all times pertinent hereto, Mr. Rand directly or indirectly participated in the unlawful debt collection practices to collect an alleged debt from Ms. James that are described in this complaint.

18. In May of 2014, SIP and Mr. Fribush were served with a subpoena in a lawsuit filed in the United States District Court for the Western District of Michigan, commanding SIP and Mr. Fribush to identify the entity to whom SIP as toll-free service provider had provided a toll-free number to a toll-free subscriber, which was using the toll-free number to call and extort money from consumers by falsely threatening the consumers with arrest, prosecution and

imprisonment unless the consumers paid money to SIP's toll-free subscriber. SIP and Mr. Fribush initially claimed that they could not identify SIP's toll-free subscriber, with Mr. Fribush providing the following explanation in an email dated June 11, 2014:

> Mr. Rogers,
>
> If you visit our website at you will see that we provide "self-service" SIP trunking telephony service over the public Internet. We do not offer contracts to our customers and in fact, we have no idea whom the majority of our customers actually are. Subscribers do not physically sign any agreements with us, we do not require or maintain any documents from our customers. Rather, they must agree 'electronically' to our terms and conditions by checking a box when signing up for an account on our website. All of our customer transactions are done by our customers strictly online on our website. I would encourage you to sign up for service through our website and experience this first-hand. All of our systems are 100% automated. For PCI compliance reasons, we do not store ANY credit card information from our customers. We utilize a third party payment gateway processor, Authorize.net, for their token-based systems to house specific customer credit card data. Assuming our customers pass our automated credit card verification system, we do not require any identification to establish an account for service. Being that this is a non-traditional telephony service, and runs "over the top" on our customers existing broadband Internet connection, we do not require a physical service address.
>
> The information I have provided is everything we have on this customer in our database.
>
> Thank you,
> Mark Fribush
> SIP.US

19. SIP, Mr. Fribush and Mr. Rand each have knowledge that SIP as a toll-free service provider is in the business of providing toll-free number to toll-free subscribers, in order to knowingly enable Allied and other debt collectors to anonymously place telephone calls to consumers for the purpose of extorting money from consumer as described in this complaint.

20. SIP, Mr. Fribush and Mr. Rand each are knowing and willing participants in the extortionate debt collection practices that are described in this complaint.

21. SIP, Mr. Fribush and Mr. Rand each benefit financially through their participation

in the extortionate debt collection practices that are described in this complaint.

22.    SIP, Mr. Fribush and Mr. Rand give cover to their toll-free subscribers by often ignoring and refusing to respond to lawful subpoenas issued in federal and state court lawsuits commanding the production of information regarding the identity of their toll-free subscribers.

23.    In those instances where SIP, Mr. Fribush and Mr. Rand do respond to subpoenas commanding the production of information regarding the entity of their toll-free subscribers, the response is evasive and incomplete, in efforts to conceal the identify of their toll-free subscribers.

24.    A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

**IV.    Facts**

25.    Ms. James borrowed several hundred dollars from Cash Yes by way of a "payday loan" in a transaction made pursuant to the Deferred Presentment Service Transactions Act,

M.C.L. § 487.2121 *et seq.*  The loan was made at an annualized interest rate of more than 300 percent.  In connection with the transaction, Ms. James provided the Cash Yes with a post-dated check drawn on Ms. James' checking account at Independent Bank, which the payday lender was to present for payment when the loan became due in a few weeks.

26. Ms. James used the borrowed funds to purchase goods and services for personal, family and household purposes.  Any resulting obligation of Ms. James to repay the borrowed money was a "debt" as the term is defined and used in the FDCPA.

27. When Cash Yes presented Ms. James' post-dated check to Independent Bank for payment, the check was dishonored because Ms. James had failed to deposit sufficient funds in her account to cover the check.

28. The Deferred Presentment Service Transactions Act states: "A drawer is not subject to any criminal penalty for entering into a deferred presentment service transaction and is not subject to any criminal penalty in the event the drawer's check is dishonored."  M.C.L. § 487.2158(4).

29. Cash Yes charged off and sold Ms. James' account and related debt.

30. Ms. James later resolved the debt and owes nothing to Cash Yes or any other entity in connection with the account.

31. Defendant Allied claims to be the owner of Ms. James' account and related, alleged debt.  Alternatively, Allied claims that the owner of Ms. James' account and related, alleged debt placed the account and related debt with Allied for collection.

32. On or about December 17, 2014, Allied's employee and agent placed a call to Ms. James' cellular telephone and left the following recorded message on Ms. James' voice mail:

"Rebecca, this is Doug Helms contacting you in regards to your case being filed out of Kent County.  Now, by law I do have to make you aware that once Case Number 262212-8566 is filed, it does become a matter of public record and there is an order for your location.  Now Rebecca, because I'm unable to reach you by phone, I am going to have to contact your place of employment, to speak with your supervisor, and it looks like that will be your place of location.  Again ma'am, this is all a matter of public record.  Now, Ms. James, you do have a legal right to contact the litigation office that is processing your case, however you will need to speak with them before your case is filed.  Once your case is discharged from their office, all legal rights by you are forfeited.  Now Rebecca, that office has provided you with the number of 855-284-3012.  You are calling there to speak with someone in their Legal Department.  Again, Rebecca James, you are being legally notified by telephone and you will be located unless we are told otherwise."

33. Allied's employee and agent falsely represented and falsely implied to Ms. James in the above-quoted message that a lawsuit was being filed against Ms. James in Kent County, Michigan to collect the alleged debt.

34. Allied's employee and agent wrongfully and falsely represented and wrongfully and falsely implied to Ms. James in the above-quoted message that Allied and its employees and agents would be communicating with Ms. James employer regarding the falsely threatened lawsuit and alleged debt.

35. Allied's employee and agent wrongfully and falsely represented and wrongfully and falsely implied to Ms. James in the above-quoted message that Allied and its employees and agents would publicly disclose that Ms. James owed the alleged debt.

36. Allied's employee and agent wrongfully and falsely represented and wrongfully

9

and falsely implied to Ms. James in the above-quoted message that Allied maintained a Legal Department and that Allied employed one or more attorneys.

37.     Allied's employee and agent wrongfully and falsely represented and wrongfully and falsely implied to Ms. James in the above-quoted message that Allied and its employees and agents would be communicating with Ms. James employer regarding the falsely threatened lawsuit and alleged debt.

38.     Allied's employee and agent falsely represented and falsely implied to Ms. James in the above-quoted message that "[o]nce your case is discharged from [Allied's] office, all legal rights by you are forfeited."

39.     Allied and its employees and agents wrongfully attempted to collect a debt from Ms. James that Ms. James does not owe.

40.     On or about December 17, 2014, Allied's employee and agent placed a call to Ms. James' husband's cellular telephone and wrongfully and falsely stated and implied to Ms. James' husband that a lawsuit as well as criminal charges were being filed against Ms. James and that Ms. James should immediately call Allied at 855-284-3012 to discuss the matter.

41.     On or about December 17, 2014, Allied's employee and agent placed a call to Ms. James' sister-in-law's cellular telephone and wrongfully and falsely stated and implied to Ms. James' sister-in-law that a lawsuit as well as criminal charges were being filed against Ms. James and that Ms. James should immediately call Allied at 855-284-3012 to discuss the matter.

42.     On or about December 24, 2014, Allied's employee and agent placed a call to Ms. James' father-in-law's telephone and wrongfully and falsely stated and implied to Ms. James' father-in-law that a lawsuit as well as criminal charges were being filed against Ms. James and

that Ms. James should immediately call Allied at 855-284-3012 to discuss the matter.

43.     The above-described threats and representations made by Allied's employees and agents were false and part of a scripted and unlawful debt collection practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from consumers through the use of false threats, intimidation, criminal extortion, and unlawful harassment of the consumers and their relatives and other third parties.

44.     Allied and its employees and agents in the course of their unlawful efforts to collect alleged debts from Ms. James and other consumers have used various telephone numbers, including 855-284-3012, 855-367-4126 and 855-284-1258.

45.     The Federal Communications Commission requires that every toll-free number must be registered to a "Responsible Organization" or "RespOrg."  The database containing the registration information is available to the general public.

46.     The three toll-free numbers (855-284-3012, 855-367-4126 and 855-284-1258) used by Allied and its employees in their efforts to extort money from Ms. James and other consumers is are registered to a RespOrg named Bandwidth.com, Inc. ("Bandwidth").

47.     According to Bandwidth, all three toll-free numbers (855-284-3012, 855-367-4126 and 855-284-1258) have been assigned to Bandwidth's customer, defendant SIP.US, LLC.

48.     On December 5, 2014, a plaintiff's attorney in Dallas, Texas sent a letter to Mr. Fribush and SIP by email, first class mail and certified mail, complaining that Mr. Fribush and SIP had failed to respond to a subpoena commanding the production of SIP's subscriber information regarding various toll-free numbers, including 855-367-4126 (which is the number used by Allied to attempt to extort money from Ms. James).  The letter warned that the toll-free

numbers being provided by SIP to its debt collector customers were being used by those customers to routinely violate the law.  The letter warned that because SIP was actively concealing the identity of its unlawful customers by repeatedly and continuously refusing to respond to subpoenas demanding the subscriber information for those debt collectors, SIP was facilitating and participating in its customers' unlawful debt collection practices.  A copy of the letter is attached as Exhibit A.

49. On December 31, 2014, a subpoena was issued by plaintiff's counsel in a lawsuit pending in the United States District Court for the Western District of Michigan, Patricia Brown v. American Mutual Holdings Inc. et al., Case No. 1:13-cv-1072, commanding Marc J. Fribush, in his capacity as Manger of SIP.US, LLC, to produce to plaintiff's counsel on or before January 14, 2015, at 9:00 a.m., SIP's subscriber information for toll-free numbers 855-284-3012, 855-367-4126 and 855-284-1258.

50. On January 2, 2015, plaintiff's counsel emailed a courtesy copy of the subpoena to SIP and Mr. Fribush at marc@sip.us.

51. On January 5, 2015, the subpoena was served on SIP at 301 Clematis Street, Suite 3000, West Palm Beach, Florida 33401.

52. SIP and Mr. Fribush failed to timely comply with the subpoena.  SIP and Mr. Fribush failed to communicate in any way with plaintiff's counsel regarding the subpoena.

53. On January 14, 2015 at approximately 6:28 p.m., plaintiff's counsel sent an email to SIP and Mr. Fribush at marc@sip.us, advising SIP and Mr. Fribush that they had failed to timely respond to the subpoena and asking Mr. Fribush to immediately provide SIP's response to the subpoena or to contact plaintiff's counsel by noon the next day to discuss a short extension of

time for SIP to respond to the subpoena. Neither SIP nor Mr. Fribush responded to the email.

54. On January 15, 2015 at approximately 8:13 a.m., plaintiff's counsel forwarded the above-described emails to SIP and Mr. Rand at michael@sip.us, notifying Mr. Rand that according that Bandwidth had named Mr. Rand as an alternative contact to Mr. Fribush regarding the three toll-free numbers listed in the subpoena.

55. On January 19, 2015 at approximately 5:40 p.m., plaintiff's counsel sent an email to SIP and Mr. Fribush at marc@sip.us and to SIP and Mr. Rand at michael@sip.us, stating as follows:

> Mr. Fribush:
> You and your company have chosen to ignore the subpoena served on you in the federal lawsuit of Patricia Brown v. American Mutual Holdings Inc et al., Case No. 1:13-cv-1072, and directed to you in your capacity as agent and officer for SIP.US, LLC. Tomorrow, January 20, 2015 at 3:00 p.m., I intend to file a motion to have you and your company held in contempt of Court. I recommend that you and your attorney review that portion of the subpoena regarding your duty to respond as well as the portion regarding contempt.
> On a related matter, and as you already know, your company and the service it offers allow unlawful payday loan collectors, such as the ones sued by Ms. Brown in the referenced lawsuit, to remain anonymous while they criminally extort money from consumers across the country.
> The fact that you refuse to comply with our lawful subpoena commanding that you provide information available to you that would help identify these entities, while you and your company continue to profit financially by providing the service that enables these entities to continue their criminal activities, seemingly makes you and your company complicit.
> My preference is that you provide us the information at this time, as you are required by law to do. If you continue to flout the law, we will file the motion tomorrow, as well as pursue all other avenues available to us.
> I look forward to your response tomorrow.

Neither SIP, Mr. Fribush nor Mr. Rand responded to the email or subpoena in any way.

56. SIP, Mr. Fribush and Mr. Rand have directly and indirectly participated in the

described efforts to collect the alleged debt from Ms. James by providing toll-free telephone numbers to toll-free subscriber Allied, in order to knowingly enable Allied and its employees and agents to anonymously place telephone calls to Ms. James and other third parties for the purpose of extorting money from Ms. James as described in this complaint.

57. Alternatively, SIP, Mr. Fribush and Mr. Rand have directly and indirectly participated in the described efforts to collect the alleged debt from Ms. James by themselves using the described toll-free telephone numbers to anonymously place telephone calls to Ms. James and other third parties for the purpose of extorting money from Ms. James as described in this complaint.

58. A debt collector may not communicate, in connection with the collection of a debt, with any person other than the consumer, except to acquire "location information" about the consumer.  15 U.S.C. § 1692b; 15 U.S.C. § 1692c(b).

59. The FDCPA defines "location information" to mean "a consumer's place of abode and his telephone number at such place, or his place of employment."  15 U.S.C. § 1692a(7).

60. A debt collector when communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall not state that such consumer owes any debt.  15 U.S.C. § 1692b(2).

61. Defendants and their employees and/or agents communicated with Ms. James' sister-in-law and father-in-law for a purpose other than to acquire location information regarding Ms. James.

62. Defendants and their employees and/or agents in connection with their efforts to collect an alleged debt from Ms. James wrongfully communicated to Ms. James' sister-in-law

and father-in-law that Ms. James owed an alleged debt, and thereby violated the FDCPA, 15 U.S.C. § 1692b(2) and 15 U.S.C. § 1692c(b).

63. The FDCPA states that it is unlawful for a debt collector to use or threaten to use criminal means to harm the reputation or property of any person. 15 U.S.C. § 1692d(1).

64. The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity. 15 U.S.C. § 1692d(6).

65. The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt. 15 U.S.C. § 1692e(2)(A).

66. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

67. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action. 15 U.S.C. § 1692e(4).

68. The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken. 15 U.S.C. § 1692e(5).

69. The FDCPA states that it is unlawful for a debt collector to falsely represent or falsely imply that the consumer committed any crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

70. The FDCPA states that it is unlawful for a debt collector to communicate or threaten to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

71. The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

72. The FDCPA states that it is unlawful for a debt collector to fail to disclose in an oral communication with the consumer that the communication is from a debt collector and that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11)

73. The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

74. The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

75. The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

76. The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

77. Defendants have violated the FDCPA, 15 U.S.C. §§ 1692d(1) and (6), 1692e(1), (2)(A), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 1692f(1).

78. Defendants and their employees and/or agents falsely accused Ms. James of having committing a crime. Ms. James's refusal to pay the alleged debt was not commit a crime under Michigan law because the Michigan Deferred Presentment Service Transactions Act, which regulates payday lending in Michigan, expressly states that the borrower in a payday loan transaction "is not subject to any criminal penalty in the event the drawer's check is dishonored." M.C.L. § 487.2158(4).

79. Morever, M.C.L. § 750.213 states in pertinent part:

> Sec. 213.  MALICIOUS THREATS TO EXTORT MONEY – Any person who shall, either orally or by a written or printed communication, maliciously threaten to accuse another of any crime or offense . . . with intent to extort money or any pecuniary advantage whatever . . . shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years or by a fine of not more than 10,000 dollars.

Collection of a valid, enforceable debt does not permit malicious threats of injury if payment is not made. *People v. Maranian*, 359 Mich. 361 (1960).

80. Defendants and their employees and/or agents attempted to criminally extort money from Ms. James and violated M.C.L. § 750.213.

81. The acts and omissions of Allied, SIP, Mr. Fribush and Mr. Rand, and their employees and agents, done in connection with efforts to collect the alleged debt from Ms. James, were done intentionally and wilfully.

82. Allied, SIP, Mr. Fribush and Mr. Rand, and their employees and agents, wilfully violated the FDCPA.

83. Defendants failed to send Ms. James a timely and written notice containing the

information required by the FDCPA, 15 U.S.C. § 1692g(a).

84. The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged." 15 U.S.C. § 1692(e).

85. Defendants, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

86. As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

**V.     Claims for Relief**

**Count 1 – Fair Debt Collection Practices Act**

87. Plaintiff incorporates the foregoing paragraphs by reference.

88. Defendants have violated the FDCPA. Defendants' violations of the FDCPA include, but are not necessarily limited to, the following:

a) Each defendant violated 15 U.S.C. § 1692b;

b) Each defendant violated 15 U.S.C. § 1692c;

c) Each defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

d) Each defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

e) Each defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

f) Each defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against defendants for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

**Demand for Trial by Jury**

Plaintiff demands trial by jury.

Dated: January 23, 2015                     /s/ Phillip C. Rogers
                                            Phillip C. Rogers (P34356)
                                            Attorney for Plaintiff
                                            40 Pearl Street, N.W., Suite 336
                                            Grand Rapids, Michigan 49503-3026
                                            (616) 776-1176
                                            ConsumerLawyer@aol.com